Filed 8/15/22  In re S.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | D080279 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>M.C.,<br><br>     Defendant and Appellant. | (Super. Ct. Nos. EJ4311A-B) |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

M.C. (Mother) appeals the orders in the Welfare and Institutions Code section 300[1] dependency proceedings of her minor children, S.M. and A.M., summarily denying her section 388 petition to modify the juvenile court's prior orders placing the children with their father, Sa.M. (Father). She contends the court abused its discretion because her section 388 petition made a prima facie showing that circumstances had changed during the three-week period since the issuance of the prior orders and that her requested orders placing the children with her instead was in their best interests. As explained *post*, we conclude the court did not abuse its discretion and therefore affirm the orders summarily denying her petition.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I

*Initial Dependency Petitions*

Mother has three minor children: S.M., A.M., and J.M.[3] When Mother gave birth to S.M. in 2015, both tested positive for methamphetamines. As a result of intervention by the San Diego County Health and Human Services Agency (Agency), Mother voluntarily participated in a substance abuse treatment program and Narcotics Anonymous (NA) classes, but relapsed shortly thereafter. After additional

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] For a more detailed factual and procedural background, see our recently issued opinion in Mother's previous appeal in these dependency cases, *In re S.M. et al.* (June 15, 2022, D079745), a nonpublished opinion (*S.M. I*).

[3] J.M. is not a party to this appeal.

measures were instituted, Mother successfully completed services and the voluntary case was closed.

In 2016, Mother gave birth to her second child, A.M. In September 2018, Mother relapsed again and subsequently gave birth to her third child, J.M., who tested positive for amphetamines and was hospitalized in the neonatal intensive care unit (NICU) for "sepsis and rapid breathing." Mother told the Agency she used methamphetamines twice during her pregnancy, including the day before she gave birth to J.M. She knew that using methamphetamines was harmful to her unborn baby. Mother told the Agency she began using methamphetamines when she was 15 years old (in or around 2005) and was "on and off" drugs thereafter, but stopped using between ages 18 and 20 (from 2008 to 2010).

In September 2018, the Agency filed dependency petitions on behalf of all three children against Mother and Father, pursuant to section 300, subdivision (b)(1). At the detention hearing, the juvenile court found the Agency made prima facie showings on the petitions and detained the children in out-of-home care. S.M. and A.M. were initially placed in a foster home and then later placed with a maternal aunt.

At the contested jurisdiction and disposition hearing in November, the juvenile court found the petitions' allegations to be true and placed S.M. and A.M. with Mother, who was living with her mother (the maternal grandmother), on the condition that Father not reside in the family home. Mother enrolled in a substance abuse treatment program the day dependency petitions were filed and had been making "good" progress.

At the six-month review hearing in June 2019, the Agency reported that Mother struggled to maintain her sobriety. She had relapsed multiple times and used methamphetamines in December 2018 and

3

February 2019 and was discharged from her substance abuse treatment program in February 2019. After she enrolled in a new substance abuse treatment program in March, Mother improved, performed well in that treatment program, and had no further positive drug tests. At the review hearing, the juvenile court found Mother had made "some progress" with her case plan and continued placement of S.M. and A.M. with her.

However, there were several incidents of domestic violence thereafter. In June 2019, Father was arrested for violating a restraining order while the children were home with Mother and the maternal grandmother. In September 2019, the maternal grandmother obtained a temporary restraining order (TRO) against Mother, asserting that in May Mother had grabbed and thrown her down two steps. The maternal grandmother also alleged that in June Mother had kicked her, causing her to fall and strike her head.

In its January 2020 report for the contested 12-month review hearing, the Agency reported that Mother had successfully completed her substance abuse treatment program, tested negative throughout this period, and was able to maintain her sobriety. The Agency reported that all three children were "very bonded" with Mother and she was "very loving" with them. At the January 2020 hearing, the juvenile court found that Mother had made substantive progress with her case plan and continued family maintenance services and placement of S.M. and A.M. with her.

## II

### *Supplemental Dependency Petitions*

In June 2020, the Agency filed supplemental dependency petitions on behalf of S.M. and A.M. against both parents pursuant to section 387,

4

requesting that the children be removed from Mother's care. The Agency stated that in May Mother came home at 2:00 a.m. under the influence of methamphetamines. When the maternal grandmother told her she could not be in the house, Mother became angry, grabbed a large kitchen knife, stabbed the walls, and threatened the maternal grandmother.

At the detention hearing, the juvenile court found the Agency had made a prima facie showing on the supplemental petitions, detained S.M. and A.M. in out-of-home care, and ordered Mother to have reasonable supervised visitation. The Agency placed S.M. and A.M. with the maternal aunt.

The Agency thereafter reported that it had been working with Mother for nearly 20 months, addressing her substance abuse and general neglect of the children. Although Mother had completed a substance abuse treatment program, she failed to maintain consistent communication with her substance abuse specialist and the Agency did not believe she "use[d] the tools to maintain her sobriety when faced with her triggers." In light of the fact that the statutory time for reunification services had been exceeded and Mother continued to struggle with her sobriety, the Agency recommended that reunification services be terminated for both parents and a section 366.26 hearing be set to select a permanent plan for the children.

At the August 2020 contested jurisdiction and disposition hearing, the juvenile court found true the allegations in the supplemental petitions by clear and convincing evidence. The court removed S.M. and A.M. from the custody of Mother pursuant to section 361, subdivision (c), continued placement of the children with the maternal aunt, and ordered Mother to continue receiving reunification services.

5

## III

### *S.M.'s and A.M.'s Section 388 Petition*

In February 2021, counsel for S.M. and A.M. filed a section 388 petition for modification, requesting the juvenile court terminate Mother's reunification services and set a section 366.26 hearing to select a permanent plan.[4] As a change in circumstances, the petition alleged that Mother had struggled to maintain her sobriety and had tested positive for methamphetamines in October and December 2020 and for alcohol in November 2020. Mother had also missed a drug test in January 2021 and had not been engaged in treatment since late January 2021. The petition alleged that S.M. and A.M. had been involved in juvenile dependency since 2018 and deserved stability and permanency in a timely manner.

The Agency maintained its recommendation that reunification services be terminated for both parents and a permanent plan be selected at a section 366.26 hearing.

At the April 2021 combined contested six-month review hearing and contested hearing on S.M.'s and A.M.'s section 388 petition, the court found that Mother's inaction regarding treatment for her drug abuse created a substantial likelihood that reunification would not occur and therefore terminated Mother's reunification services. The court found there had been a change of circumstances and it was in the children's best interests to grant the requested modified order. The court further found that Father had made some progress in his case plan and that it appeared the children may be returned to him and a permanent plan may not have to be selected. Accordingly, the court therefore continued reunification services for

---

[4] The children's counsel initially sought termination of both parents' services; however, their counsel subsequently withdrew the petition as to Father.

6

Father.

IV

*Mother's First Section 388 Petition*

On August 19, 2021, the day set for the 12-month review hearing, Mother filed a modification petition under section 388, requesting that the court reinstate her reunification services until the 18-month review hearing. Her section 388 petition asserted there was a change in circumstances because she had completed a parenting class, participated in inpatient drug treatment, made progress in therapy, was clean and sober, was stable on psychotropic medication, demonstrated insight into the protective issues, and visited with the children as consistently as the Agency would allow. Mother asserted that her requested order restoring reunification services would be in the children's best interests because they were bonded with her and she had made substantial progress in her treatment programs and continued to visit them consistently.

Mother reported to the Agency that her sober date was June 3, 2021. She had enrolled in a residential drug treatment program on that date and completed the program on August 31. Mother reported she had created a relapse prevention plan, had random drug testing each week at her treatment facility, virtually attended NA and AA (Alcoholics Anonymous) meetings two to three times each week, and had a sponsor. Mother told the Agency that she had learned the effects of her addiction on her children.

The Agency opposed Mother's section 388 petition and her request for reinstatement of reunification services. Although the Agency acknowledged Mother's progress in mitigating the protective issue, it noted that she was four months into her sobriety. Mother had already completed a drug treatment program and attended an outpatient drug treatment program, but historically relapsed after a couple months of sobriety. The

Agency believed that it was premature to conclude that Mother had made significant progress to warrant granting her section 388 petition.

The juvenile court held an evidentiary hearing on Mother's section 388 petition on November 16, 2021, which date was about three weeks before the scheduled 18-month review hearing on December 6, 2021. Mother testified that she was taking steps to maintain her sobriety, including participating in therapy and parenting classes, taking her medication, and developing a support system.

The juvenile court denied Mother's section 388 petition, noting initially that she had requested additional reunification services through the 18-month review hearing, which was set for December 6, 2021 (i.e., a three-week period). Although Mother had been doing well recently, the court noted that the problem was her "pattern of doing well and falling off the wagon."[5]

V

*18-Month Review Hearing*

In its report for the 18-month review hearing, the Agency stated that it was working on obtaining all documents required to place the children with Father in Mexico, including their original birth certificates, passports, and/or dual citizenship documents. Father was continuing to work with Desarrollo Integral de la Familia (DIF) in Mexico to complete his case plan objectives and had completed parenting classes and therapy sessions. He was participating in his drug treatment program, was attending AA meetings, and had consistently tested negative on random drug tests.

---

[5] Mother filed a notice of appeal, challenging the juvenile court's November 16, 2021 orders denying her section 388 petition. In *S.M. I*, we concluded the court did not abuse its discretion in denying her petition and affirmed the orders. (*S.M. I*, *supra*, D079745.)

Although DIF had completed an evaluation of Father's home, the Agency was awaiting an English translation of the DIF's report. An Agency social worker had also conducted a virtual video walk-through of Father's home. Father reported that he was able to work as a carpenter to provide for the children and had family support. Father lived with the paternal grandmother and the paternal great-uncle. He had identified local schools for the children. Father had unsupervised telephone and video visits with the children three times per week. The Agency also reported that Mother was residing in a sober living home and was working part-time. She was participating in her aftercare drug treatment program, was attending NA/AA meetings, and was compliant with her psychotropic medication.

At the initial December 6, 2021 review hearing, Mother opposed the Agency's recommendation that the children be placed with Father in Mexico and requested that the hearing be continued and set for a contested 18-month review hearing in 60 days. The court granted her request. The court also ordered the Agency to facilitate at least two unsupervised visits per week between Mother and the children. The court also gave the Agency discretion to arrange a 60-day trial visit for the children with Father, with the concurrence of their counsel.

In its addendum report for the contested 18-month review hearing, the Agency recommended that the court order that the children be placed with Father in Mexico with family maintenance services. The Agency had received an English translation of the DIF's evaluation of Father's home and documents confirming that Father had completed some of his case plan objectives and had negative drug tests. Father told an Agency social worker that he believed it was important for the children to have regular communication, and he fully supported their communication, with Mother

9

to maintain their relationship. The Agency also reported that Mother continued to have negative drug tests and was engaging in services. Mother's service providers were concerned about the children moving to Mexico because of the great distance, Mother's inability to travel there to visit the children, and Mexico's violence and environment. They were also concerned about the domestic violence history between Mother and Father. In January 2022, Mother cancelled two scheduled, unsupervised visits with the children because of work conflicts. In February, Mother requested an additional visitation day, but her past unsupervised visitation had not been consistent.

At the contested 18-month review hearing that was held over three days (i.e., February 7, 14, & 18, 2022), Andrea Echavarria, the Agency social worker assigned to the children's cases, testified that she planned to work with DIF and the International Liaison Office (ILO) to coordinate in-home visits to check on the children after their placement with Father in Mexico. She had spoken with the paternal grandmother twice regarding facilitating the children's video visits with Mother. Because Father had tested negative on drug tests between April and August 2021, she believed he did not require further drug testing, but was willing to request testing through DIF. Although Father had not cared for the children in the past, neither she nor his parenting provider had any concerns about his ability to do so. She also had no concerns about the nature and quality of Father's home. The Agency's transition plan for the children was to request a placement visit at the border through the ILO and the Mexican Consulate. Father was cooperative regarding the transition plan and was open to

traveling to Tijuana or a nearby airport to receive the children into his

10

care. The social worker also testified that both children speak Spanish.

Father testified that he had been sober since March 2021. He had previously abused "crystal" methamphetamine. His relapse prevention program included family member support, his AA group, and his two sponsors. He was attending AA meetings five to six days per week. He testified that he was deported from the United States to Mexico in 2020 because he had been accused of domestic violence and had violated a restraining order protecting Mother, her nephew, and the maternal grandmother. His support network consisted of his parents, two sisters, and a niece, all of whom lived nearby. He testified that he wanted the children to have a relationship with Mother and the maternal relatives, provided Mother was sober. He had spoken with principals at the children's potential schools and was prepared to obtain any needed services, such as therapy, for them.

The children's current caregiver testified that Mother had two visits per week with the children and had cancelled visits only because of work conflicts. The caregiver was concerned that Mother and the maternal relatives did not have the time or money to visit the children if they were placed with Father in Mexico. On cross-examination, she agreed that her only concern about the children's placement with Father was that she believed he had untreated domestic violence issues. She had no concerns about his ability to provide the children with a good environment. She acknowledged Mother had a history of domestic violence unrelated to Father, including her wielding a knife in the maternal grandmother's home. She admitted she had never witnessed any domestic violence between Mother and Father.

11

Mother testified that she was continuing to comply with the terms of her outpatient substance abuse treatment program, including working with a sponsor and attending 12-step meetings. She testified that she could have the children for overnight visits at her sober living facility. She was working on a relapse prevention plan, consisting of calling her sister and asking her for her advice or to care for the children. She testified that Father never participated in the children's daily routines when he returned home from work. She testified that Father "[a]lways" was physically violent in the children's presence and "[a]lways" placed his hands on her and beat her up when the children were around. Mother believed that it was in the children's best interests to remain in the United States. Mother admitted that she committed domestic violence in the children's home when she wielded a knife in May 2020, but claimed the maternal grandmother had exaggerated the incident's details. She admitted she had damaged property and was under the influence of methamphetamine at the time. Mother admitted she had participated in several drug rehabilitation programs during the past eight years. She admitted that she had not shared the address of her sober living program with the Agency social worker.

Mother's counsel submitted various documents on her behalf, including a February 10, 2022 letter from her substance abuse treatment program, stating that her last drug use date was June 3, 2021, and that she began treatment on September 1, 2021. The letter further stated that Mother had been tested for drugs 20 times since September 2021, the results of which had all been negative. The letter further stated that Mother was compliant with the program's terms, was employed, was living in a recovery residence, and had completed a 20-week parenting class.

12

Mother's counsel clarified for the court that Mother was not requesting that the court return the children to her custody at that time.

On February 18, 2022, after hearing closing arguments, the juvenile court ordered that the children be placed with Father. The court also ordered family maintenance services for Father and family enhancement services for Mother. The court found that the evidence did not show that there would be a substantial risk of detriment to the children's emotional or physical well-being if they were placed with Father. The court noted that if the children were not returned to Father at that point, he could lose his parental rights at a section 366.26 hearing. The court stayed its placement orders for 21 days to allow counsel for Mother or the children to file a writ petition and request a stay from the appellate court. The court ordered the Agency to formulate a transition plan during that 21-day stay period. It asked Father to consider allowing the transition to occur during the children's spring break at the end of March. The court denied Mother's request for overnight visits with the children at that time, noting she had not yet provided the Agency social worker with her address. The court encouraged the social worker to evaluate Mother's home for overnight visits if and when Mother provided the worker with her address. The court set a special hearing three weeks later to determine whether or not the appellate court had intervened regarding its placement order and to follow up on the Agency's transition plan.[6]

In its addendum report for the March 10, 2022 special hearing, the Agency stated that its initial transition plan was for the children to have a transitional overnight weekend visit with Father from March 18 through

[6] Mother filed a notice of appeal, challenging the juvenile court's February 18, 2022 orders. However, after Mother's appellate counsel submitted a brief stating that there were no arguable issues on appeal, we issued an order on June 6, 2022, dismissing her appeal.

13

March 20.  The children would then be officially placed with Father on April 1.  However, on February 28, the Agency received a child abuse referral alleging that the caregiver had physically abused the children.  As a result, the Agency believed it would be in the children's best interests to be placed with Father as soon as possible while it investigated the matter. The Agency arranged for a new placement date of March 16 with the assistance of the ILO and the Mexican Consulate.

The Agency also reported that Mother had provided it with her current sober living address on February 18, and its social worker had conducted a scheduled home inspection on February 23.  Mother shared a bedroom with two other mothers and their children.  Mother slept on the top bunk of a full/queen bunk bed and planned for the children to sleep on the top bed with her.  The social worker informed Mother that the children would need their own bed.  Per Mother's request, the social worker authorized Mother to have unsupervised visits with the children at her home.

The Agency reported that on March 4 its social worker spoke with Mother about overnight visits with the children, stating that the Agency would first need information from Mother's roommates so that it could run general background checks which it conducts on all adults who live with or have exposure to children.

VI

*Mother's Instant Section 388 Petition*

On March 10, the date set for the special hearing, Mother filed the instant section 388 petition, seeking modification of the juvenile court's February 18, 2022 orders.  Her section 388 petition alleged that the circumstances had changed since the juvenile court's February 18 orders

and requested new orders placing the children with her or, alternatively, granting her overnight visits, which orders would be in the children's best interests.

At the March 10 hearing, Mother's counsel represented that Mother's sober living residence allowed Mother to have overnight visits with, or placement of, the children at that residence. Her counsel also argued that the Agency's expedited transition plan was not reasonable because it was based on an anonymous child abuse referral and requested that the court retain the Agency's original transition plan. The Agency's counsel stated that the Agency did not oppose Mother's request for overnight visitation with the children, provided that the children not be left alone with any adult who had not been cleared by a background check. The Agency opposed Mother's section 388 petition, arguing she had not made a prima facie showing on the petition's allegations. In light of its open investigation of the child abuse referral regarding the children's caregiver, the Agency believed an expedited transition of the children to Father was in their best interests.

The juvenile court summarily denied Mother's section 388 petition, finding that she had not made a prima facie showing in support of her petition. Noting that its February 18 orders placing the children with Father was in full force and effect, the court declined to make a specific ruling on how the Agency should effect the children's transition to his home.[7] Nevertheless, the court ordered that Mother have overnight visitation with the children until their placement with Father and thereafter have overnight

_____

[7] Following the February 18, 2022 orders, none of the parties filed a motion for an appellate stay of, or a writ petition challenging, those orders. Rather, as noted *ante*, Mother filed only an appeal challenging those orders, which appeal we dismissed on June 6, 2022.

15

visitation at least once every 90 days. Mother timely filed a notice of appeal, challenging the court's March 10, 2022 orders denying her section 388 petition and denying her request for an order to create a gradual transition plan for the children to move to Mexico.

DISCUSSION

I

*Section 388 Legal Principles Generally*

Section 388, subdivision (a) provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition . . . shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." The burden of proof is on the moving party to show, by a preponderance of the evidence, that: (1) there are changed circumstances or new evidence since the previous order; and (2) the requested modification of that previous order would be in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 (*G.B.*); *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

In support of a section 388 petition, the moving party must show *changed*, not merely changing, circumstances. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47 (*Casey D.*); *In re Alayah J.* (2017) 9 Cal.App.5th 469, 482 (*Alayah J.*).) "A petition which alleges merely changing circumstances

16

and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] ' "Childhood does not wait for the parent to become adequate." ' [Citation.]" (*Casey D.*, at p. 47, quoting *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.) To prevail on a section 388 petition, the petitioner must establish a "substantial" change of circumstances. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*).) The change must be genuine and " 'of such significant nature that it requires a setting aside or modification of the challenged prior order.' " (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615; accord *In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 (*A.A.*).) Not "every change in circumstance can justify modification of a prior order." (*A.A.*, at p. 612.) A section 388 petition must be liberally construed in favor of its sufficiency. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461 (*Angel B).*)

The petitioner "need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) However, if the petitioner does not meet that threshold showing, the juvenile court in its discretion may deny a request for a section 388 evidentiary hearing. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 (*Jasmon O.*).) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) Alternatively stated, a prima facie case is made on a section 388 petition if its allegations show section 388's two elements are supported by probable cause and need not show a probability of prevailing on the petition. (*G.B.*, *supra*, 227 Cal.App.4th at

17

p. 1157; *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432.)  The petition's allegations must be specific regarding the evidence to be presented and must not be conclusory.  (*Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.)  In deciding whether a prima facie showing has been made, the court may consider the entire factual and procedural history of the case.  (*Jasmon O.*, at p. 415; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)  A summary denial of a section 388 petition does not violate due process.  (*Jasmon O.*, at p. 415; *Angel B.*, *supra*, 97 Cal.App.4th at p. 460.)

The decision whether to grant or deny a section 388 petition is within the discretion of the juvenile court.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228; *In re Y. M.* (2012) 207 Cal.App.4th 892, 920.)  Likewise, a decision to summarily deny a section 388 petition without an evidentiary hearing is within the juvenile court's discretion.  (*Angel B.*, *supra*, 97 Cal.App.4th at p. 460; *Zachary G.*, *supra*, 77 Cal.App.4th at p. 808.)  On appeal, a reviewing court will not disturb a discretionary decision by the juvenile court unless it abuses its discretion by making an arbitrary, capricious, or patently absurd determination.  (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318; *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)  The appellant has the burden on appeal to affirmatively show that the juvenile court abused its discretion.  (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

II

*Summary Denial of Mother's Section 388 Petition*

Mother contends the juvenile court erred by summarily denying her section 388 petition.  In particular, she argues the court erred by finding that she had not made a prima facie showing that circumstances had

changed since its February 18, 2022 orders and that her requested orders

18

were in the children's best interests.

A

In her section 388 petition filed on March 10, 2022, Mother requested orders modifying the juvenile court's February 18, 2022 orders. Her section 388 petition alleged that the circumstances had changed since the juvenile court's February 18 orders and requested new orders placing the children with her or, alternatively, granting her overnight visits, which orders would be in the children's best interests. In particular, Mother alleged the following changes in circumstances since the February 18 orders: (1) she had been clean and sober for nine months; (2) she had maintained regular and consistent visitation with the children; (3) the children were extremely bonded with her; (4) she had enrolled in domestic violence classes; (5) the February 18 orders placing the children with Father in Mexico would severely prevent or limit her ability to have in-person visits with them; and (6) the Agency had no plan for the children's ongoing visitation with the maternal relatives. Her section 388 petition attached the following documents in support of her allegations: (1) a March 10 letter from her sober living residence stating that she had followed all of its rules, including attendance at AA/NA meetings since her arrival on February 18; (2) a February 10 letter from her outpatient treatment program regarding her progress and sobriety (which letter had previously been admitted in evidence and considered by the court at the contested 18-month review hearing); (3) a March 8 letter from her domestic violence program confirming her enrollment on February 28; and (4) various photographs showing her sober living residence and showing the children with her.

At the March 10 hearing, Mother's counsel represented that Mother's

sober living residence allowed Mother to have overnight visits with, or placement of, the children at that residence. The Agency's counsel stated that the Agency did not oppose Mother's request for overnight visitation with the children, provided that the children not be left alone with any adult who had not been cleared by a background check. The Agency opposed Mother's section 388 petition, arguing she had not made a prima facie showing on the petition's allegations.

The juvenile court summarily denied Mother's section 388 petition, finding that she had not made a prima facie showing in support of her petition. In particular, the court found that she had not made a prima facie showing of changed circumstances. Although the court declined to make a specific ruling on how the Agency should effect the children's transition to his home, it ordered that Mother have overnight visitation with the children until their placement with Father and thereafter have overnight visitation at least once every 90 days.

B

Based on our review of the record, we conclude the juvenile court did not abuse its discretion by summarily denying Mother's section 388 petition. In particular, we conclude the juvenile court correctly found that her petition, along with its attachments, did not make a prima facie showing that there were changed circumstances or new evidence since its prior February 18, 2022 orders.

Importantly, Mother had the burden to make a prima facie showing that there had been a "substantial" change in circumstances in the *three-week period* since the juvenile court's prior February 18, 2022 orders. (§ 388, subd. (a); *Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223.) However, her petition did *not* allege *any* specific

20

substantial change that occurred during that three-week period. Rather, her allegations regarding changed circumstances generally related to changes over a longer period of time during the children's dependency cases. First, her petition alleged that she had been clean and sober for nine months. Presumably in support of that allegation, her petition attached a copy of a March 6, 2022 letter from her sober living residence stating that Mother had followed all of its rules, including attendance at AA/NA meetings since her arrival on February 18, 2022.[8] However, given the fact that Mother had recently presented evidence at the February 18, 2022 hearing that she had been sober since June 3, 2021, her section 388 petition's allegation that she had, in effect, continued to remain sober during the three-week period since the February 18 orders cannot reasonably support a finding that there had been a "substantial" change in her sobriety during that three-week period.

Second, Mother's section 388 petition alleged that she had maintained regular and consistent visits with the children despite "hurdles" set forth by the Agency's social worker. However, evidence was presented at the prior February 2022 hearing that Mother had regularly visited with the children. In its status review report for the February 2022 hearing, the Agency stated that the Mother had been consistent with her supervised visitation with the children three-to-four times a week. Although the Agency's addendum report for that hearing stated Mother had not been consistent with her two-hour long, unsupervised visits with

---

[8] Mother's section 388 petition also attached a copy of a February 10, 2022 letter from her outpatient drug treatment program regarding her progress and sobriety. However, because that letter had previously been admitted in evidence and considered by the juvenile court at the February 2022 hearing, it could not constitute a change in circumstance or new evidence since the February 18, 2022 orders.

21

the children in the Agency's office twice a week, it noted that Mother had been unable to attend two visits in January 2022 because of her work schedule. At the February 2022 hearing, the children's current caregiver testified that Mother had two visits per week with the children and had cancelled visits only because of work conflicts. Given the fact that evidence was admitted during the February 2022 hearing that Mother had attended two visits per week with the children except when her work schedule precluded certain visits, her section 388 petition's allegation that she maintained her regular and consistent visits with the children during the three-week period since the February 18 orders cannot reasonably support a finding that there had been a "substantial" change in her visitation with the children during that three-week period.

Third, Mother's section 388 petition alleged that the children were extremely bonded with her. However, she did not allege the children were not extremely bonded with her prior to, or at the time of, the February 18, 2022 orders, and had only become extremely bonded with her during the three-week period after the February 18, 2022 orders. On the contrary, the juvenile court expressly stated at the February 18, 2022 hearing that Mother "definitely has a bond with the [children]."[9] Accordingly, her section 388 petition's conclusory allegation that the children had, in effect, become extremely bonded to her during the three-week period since the February 18 orders cannot reasonably support a finding that there had been a "substantial" change in the children's bonding since those orders.

Fourth, Mother's section 388 petition alleged that she had enrolled in

_____

[9]     The record also shows that in its January 2020 12-month review report, the Agency stated the children were very bonded with Mother.

22

domestic violence classes.  In support of that allegation, her petition attached a letter from her domestic violence program, stating that Mother had enrolled in classes on February 28, 2022.  Given the fact that Mother's reunification services had previously been terminated and she no longer lived with, or had a relationship with Father, her petition's allegation that she had enrolled in domestic violence classes a mere 10 days before she filed her petition cannot reasonably support a finding that there had been a "substantial" change in circumstances in support of her petition.

Fifth, Mother's section 388 petition alleged that the juvenile court's February 18, 2022 orders placing the children with Father in Mexico would severely prevent or limit her ability to have in-person visits with them. However, that allegation wholly fails to allege there had been a change in circumstances since the February 18, 2022 orders.  Rather, that allegation simply complains about the effect of the February 18, 2022 orders and not that there had been a change in circumstances since the February 18, 2022 orders.  Therefore, that allegation cannot reasonably support a finding that there had been a "substantial" change in circumstances in support of her petition.

Finally, Mother's petition alleged that the Agency did not have a plan for the children's ongoing visitation with their maternal relatives. Again, that allegation did not allege any change in circumstances since the February 18, 2022 orders.  Rather, it presumably alleged that the Agency did not have a plan for maternal relative visitation at the time of the February 18, 2022 orders placing the children with Father in Mexico and that, three weeks later, the Agency still did not have such a plan. Accordingly, contrary to Mother's assertion, her petition's allegation, in effect, alleged that there had been *no change* in circumstances regarding

23

the children's visitation with the maternal relatives. Therefore, that allegation cannot reasonably support a finding that there had been a "substantial" change in circumstances in support of her petition.

Because none of the allegations in Mother's section 388 petition, even if supported by credible evidence at an evidentiary hearing, would sustain a favorable decision on her petition, the juvenile court correctly concluded that Mother had not made a prima facie showing of changed circumstances in support of her petition. (*Zachary G., supra,* 77 Cal.App.4th at p. 806.)

Accordingly, we conclude the court did not abuse its discretion by summarily

denying her section 388 petition.[10] (*Angel B.*, *supra*, 97 Cal.App.4th at p. 460; *Zachary G.*, at p. 808.)

C

Because we conclude Mother's section 388 petition did not make a prima facie showing of a substantial change in circumstances or new evidence since the February 18, 2022 orders, we need not, and do not, address the question of whether her section 388 petition also failed to make a prima facie showing that her requested modified orders were in the children's best interests. Even if we were to address that question, we believe it is highly unlikely that her petition made a prima facie showing that the requested orders placing the children with her, rather than Father, would be in the children's best interests. At most, that allegation was wholly conclusory and

[10] To the extent Mother argues on appeal that her section 388 petition also alleged a change in circumstances in that she had secured a safe and stable residence since the February 18, 2022 orders, Mother does not cite in her opening brief any actual language in her section 388 petition making such an allegation. In particular, item 7 of her section 388 petition, in which Mother sets forth "[w]hat has happened since [the February 18, 2022] order[s]," wholly omits any allegation that Mother had obtained a safe and stable residence for the children. Even assuming arguendo that Mother's attachment of the March 6, 2022 letter from her sober living residence could be construed as impliedly making such an allegation, we would conclude that the letter did not make a prima facie showing of a "substantial" change in circumstances since the February 18, 2022 orders and, in any event, showed, at most, "changing," rather than "changed," circumstances. (*Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223; *Casey D.*, *supra*, 70 Cal.App.4th at p. 47; *Alayah J.*, *supra*, 9 Cal.App.5th at p. 482.)

Likewise, to the extent Mother argues on appeal that her section 388 petition also alleged a change in circumstances in that the Agency had substantially altered its transition plan for the children since the February 18, 2022 orders, Mother does not cite in her opening brief any actual language in her section 388 petition making such an allegation. Absent any such allegation in her section 388 petition, we need not, and do not, address that argument.

the juvenile court, considering the entire record of the children's dependency cases, reasonably could find that Mother had not made a prima facie showing that her requested placement orders would be in the children's best interests.[11]

## DISPOSITION

The March 10, 2022 orders are affirmed.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.

---

[11] Because at the March 10, 2022 hearing the juvenile court ordered that Mother be allowed overnight visits with the children until their placement with Father in Mexico and every 90 days thereafter, we also need not, and do not, address her petition's alternative requested modified orders granting her overnight visits.